Burke, J.
We ordered reargument in this case so that we might reconsider our initial determination (20 N Y 2d 360) in light of the recent Supreme Court decision in Bumper v. North Carolina (391 U. S. 543). The single issue before us is whether the search that was conducted in this case may be sustained without a warrant.
The facts, critical to our determination, are quite simple. Three detectives of the Mount Vernon Police Department had obtained a warrant directing the search, inter alia, of two high school students and their lockers at the Mount Vernon High School. The detectives presented the warrant to Dr. Adolph Panitz, the vice-principal of the school, who summoned the two students to his office. The detectives searched the boys and found nothing. After a brief interrogation, two of the detectives took one youth to his locker, leaving the defendant in the presence of the vice-principal and the remaining detective. At this time, the defendant was asked if he had marijuana in his locker. The youth did not answer, but merely nodded in an uncertain manner. The detective persisted, so that the youth replied either “ I guess so ” or “ Maybe ”. /The detective, Dr. Panitz, the school custodian and the defendant then went tqAho-4atter>s~Iockef: Dr. Panitz opened the locker witlT his master key and the detective found marijuana cigafettes~~in the.defendant’s jacket.
/Subsequently, it was held that the warrant was ineffective. insofarlus the search of the locker was concerned. The defendant then moved tosuppress the use of the cigarettes as evidence in a youthful offender proceeding. The Trial Judge denied the motion, stating in part that VThe Board of Education, through Dr. Panitz. retained rlomirno-n over the use_of the lockers and the Court finds thai-the-search. was legaLAL TlnT'Appellate Term disagreedpstating in a Per Curiam opinion that “ The search was illegal and cannot be justified upon the theory of consent on the part of the vice-principal of said school ” (51 *524 Misc 2d 140). In our initial determination, we reversed the Appellate Term and sustained the denial of the motion to suppress. Judge Keating, writing for a majority of the court, concluded that Dr. Panitz consented to the search and that such consent was binding upon defendant. In his opinion, he pointed out that the locker searched was assigned to defendant Overton at the beginning of the school year. He was given a combination lock, but was required to disclose the combination to his official teacher. In addition, both Dr. Panitz and the school custodian possessed a master key to all lockers in the school. Also, regulations governed the use of this facility so that each student had exclusive possession of the locker only vis-a-vis other students. In summarizing the supervisory position retained by the school, Judge Keating observed, “ Not only have the school authorities a right to inspect but this right becomes a duty when suspicion arises that something of an illegal nature may be secreted there. When Dr. Panitz learned of the detectives’ suspicion, he was obligated to inspect the locker. This interest, together with the nonexclusive nature of the locker, empowered him to consent to the search by the officers.” (20 N Y 2d, p. 363; emphasis supplied.) The dissenters argued that ‘ ‘ the principal opened the door, not because he was exercising a free supervisory control over the locker in the interest of the school program, but because he felt the invalid warrant compelled him to do so.” (20 N Y 2d, supra, at p. 364.)
Following our decision, the Supreme 'Court decided Bumper v. North Carolina (391 U. S. 543). Thereafter, a petition for certiorari was filed in the Supreme Court of the United States where, on October 28, 1968, that court granted the writ in a Per Curiam opinion, vacated the judgment and remanded this case for further consideration in light of the Bumper decision. (393 U. S. 85.)
We are of the opinion that our initial decision, holding that the defendant is not entitled to suppress the cigarettes, was proper when rendered and is unaltered by the spirit, if not the language of Bumper v. North Carolina (supra).
The facts in Bumper illustrate the true meaning of what was written therein. In Bumper, an elderly Negro woman, living in a house located in a rural area at the end of an isolated *525 mile-long dirt road in North Carolina, was confronted by four white law enforcement officials — the County Sheriff, two deputies and a State investigator—who claimed the right to enter her premises pursuant to a search warrant. The 66-year-old woman did not attempt to prevent them, as she meekly replied “ G-o ahead”. In that case, as in the present situation, the prosecutor later attempted to sustain the search on the ground of consent. It was also argued that the search was valid because of what was uncovered. (391 U. S., supra, at p. 548, n. 10.) The Supreme Court rejected both arguments. In refusing to find a consent to the search, the court recited in detail the factual setting of the case and then declared that ‘ ‘ When a law enforcement officer claims authority to search a home under a warrant, he announces that the occupant has no right to resist the search. The situation is instinct with coercion — albeit colorably lawful coercion. Where there is coercion there cannot be consent.” (391 U. S., supra, at p. 550.) As we indicated before, it is undisputed that these words, as presented in Bumper, seem applicable and thus determinative here.
A close analysis of the facts in this case, however, discloses that there is lacking here even the “ lawful coercion” which was found objectionable in Bumper. In the City of Mount Vernon, title to all school buildings and properties is in the Board of Education. The administrators of the various schools operate them as representatives of the owner. Dr. Panitz, an experienced administrator and educator, is that representative in the Mount Vernon High School. Under his direction and supervision, desks and lockers are assigned to students for their use, under predetermined conditions, one of which prohibits the storage of material which violates the law. In this case, the detectives approached him and requested his permission to speak With the defendant. With his assistance, they first questioned the defendant and after the colloquy described above — wherein the defendant indicated that there was marijuana in his locker — Dr. Panitz opened the defendant’s locker. Were we to apply Bumper literally to this situation, we would have to conclude, as the dissenters do, that Dr. Panitz was coerced into opening the locker. Should we do so, I feel we would be extending Bumper far beyond its logical applicability.
*526 Dr. Panitz was in- charge of the .Mount Vernon High School and it was his duty to enforce the. rules and. regulations which were in existencé. As we earlier observed, “.this right becomes a duty when suspicion arises.” Dr. Panitz expressed his awareness of the duties of his position when he testified that: ‘ ‘ Being responsible for the -order, assignment, and maintenance of the physical facilities, if any report were given to me by anyone of an article or item of the nature that does not belong there, or of an illegal nature, I would inspect the locker.” As the designated representative of the people of Mount Vernon, Dr. Panitz opened the locker, which was certainly not -the private property of the defendant,¡ in fulfillment of the trust and responsibility given him by the city residents through the Board of Education. Coercion is absent in this setting, having been displaced by the performance of a delegated duty. While we did -state in -our prior opinion that Dr. Panitz was empowered to consent to the search, in retrospect, it should be noted that this consent was equated to a nondelegable duty, which had to be performed to sustain the public trust. Contrasting the facts in this case with those in Bumper, it does not require extensive analysis to conclude that the “ situation instinct with coercion ” which characterized the plight of Bumper’s 66-year-old grandmother can not be discerned where we find a public official performing a delegated duty by permitting an inspection of public property. In sum, the factual disparities render the decision in Bumper inapplicable.
Accordingly, upon reargument, we should adhere to thi£ court’s original decision of July 7, 1967 reversing the order of Appellate Terms.