Carlos OVERTON, Petitioner,

v.

Raymond C. RIEGER, Director of the Department of Probation of the County of Westchester, Respondent.

No. 69 Civ. 4006.

United States District Court,
S. D. New York.

April 6, 1970.

2. 12 P.S. § 1603.

David C. Gilberg, Mt. Vernon, N. Y., Eleanor H. Norton, American Civil Liberties Union, New York City, for petitioner.

Carl A. Vergari, Dist. Atty., Westchester County, White Plains, N. Y., for respondent; James J. Duggan, Asst. Dist. Atty., of counsel.

## MEMORANDUM

COOPER, District Judge.

Petitioner seeks a writ of habeas corpus alleging that he was adjudicated a Youthful Offender by the Court of Special Sessions of the City of Mount Vernon, New York, on June 8, 1965 and sentenced to indefinite probation up to five years at the discretion of the court.

The gravamen of the petition is that the evidence against him was illegally seized from his school locker opened for police by the school's vice-principal after the latter had been informed by police that it was suspected of containing marijuana and after they showed him a search warrant later found and now conceded to have been invalid.

■ The first issue is whether petitioner is "in custody" satisfying the jurisdictional requirement of 28 U.S.C. § 2241 et seq. In Jones v. Cunningham, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963) the United States Supreme Court established that physical restraint is not required and that a prisoner on parole is in custody for federal habeas corpus purposes. Our circuit has held that a probationer is similarly in custody. See United States v. Re, 372 F.2d 641 (2d Cir.), cert. denied, 388 U.S. 912, 87 S.Ct. 2112, 18 L.Ed.2d 1352 (1967). See also, United States v. Washington, 341 F.2d 277, 280 (3rd Cir. 1965). While the precise status of petitioner is confused, we believe he is in custody so as to entitle him to maintain an application for federal habeas corpus.

The history of this case follows. After having been adjudicated a youthful offender and placed on indefinite probation for up to five years by the Court of Special Sessions of the City of Mount Vernon on May 31, 1966, he was discharged from probation by order of the court on May 31, 1966 following reversal of its determination that the evidence against him was not seized illegally, and dismissal of the information, by the Supreme Court, Appellate Term, Second Department (People v. Overton, 51 Misc.2d 140, 273 N.Y.S.2d 143 (1966)).

In 1967 the New York Court of Appeals held that notwithstanding the invalid search warrant, the search could be sustained without a warrant because of

consent by the school vice-principal, and reversed the Appellate Term. See People v. Overton, 20 N.Y.2d 360, 283 N.Y. S.2d 22, 229 N.E.2d 596. On remand, the Appellate Term affirmed petitioner's conviction without opinion. Thereafter, on petition for certiorari, the United States Supreme Court vacated this second judgment of the Appellate Term and remanded the case for further consideration in light of Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L. Ed.2d 797 (1968). See Overton v. New York, 393 U.S. 85, 89 S.Ct. 252, 21 L. Ed.2d 218 (1968).

The New York Court of Appeals thereupon ordered reargument and upon reconsideration adhered to its prior determination. See People v. Overton, 24 N.Y.2d 522, 301 N.Y.S.2d 479, 249 N.E. 2d 366 (1969). The June 21, 1969 remittitur of the Court of Appeals to the Court of Special Sessions ordered that court to proceed according to this final determination upholding petitioner's conviction.

We believe it clear from the May 31, 1966 order discharging petitioner from probation[1] that this was an interim discharge from custody pending appeal and following reversal of his conviction and dismissal of the information pursuant to the New York Code of Criminal Procedure §§ 545, 526 and 767, and was not intended to be a final and irrevocable discharge. It was precipitated by the Appellate Term reversal in the absence of which defendant in all likelihood would have been held accountable under the probation order. Accordingly, petitioner's original judgment and sentence was reinstated pursuant to New York Code of Criminal Procedure § 546 by virtue of the final determination by the New York Court of Appeals affirming his conviction.

Petitioner's return to probationary status should not be viewed as conditional upon a subsequent order explicitly vacating the May 31, 1966 discharge. The above-described remittitur from the New York Court of Appeals is the law of the case. If ordered to report by the probation office he would have no recourse but to comply, failing which could result in the revocation of his probation and commitment. Additionally, when placed on probation the terms and conditions thereof were set forth and established. Petitioner is again subject to those restraints.

In opposition it is argued that petitioner's discharge has at all times been considered final and irrevocable by the Probation Department. Since May 31, 1966, he has not been required to report to the probation department or account for his actions or whereabouts or restricted in any manner whatsoever. See Affidavits of James J. Duggan, October 6, 1969 and November 3, 1969. As we see it, however, the inaction of the Probation Department since the June, 1969 remittitur from the Court of Appeals, based on what we believe to be an erroneous interpretation of the initial order of discharge, cannot be determinative of the question of custody.[2]

Probationary restrictions and the threat of incarceration for violation thereof suffice to constitute "custody" for purposes of federal habeas corpus. See Jones v. Cunningham, *supra* 371 U. S. 236 at 242, 83 S.Ct. 373, 9 L.Ed.2d 285; United States v. Washington, *supra*; United States v. Re, *supra*; "Developments in the Law—Federal Habeas Corpus," 83 Harv.L.Rev. 1038, 1072–79 (1970). Petitioner meets this criteria and is in custody.[3]

1. The handwritten notation by Judge John P. Griffith reads:

 "5/31/66. Appellate Term reversed and information dismissed on 5/20/66. Def. discharged."

2. The relative strictness or inaction of a petitioner's particular probation officer should not be a factor in determining whether such petitioner may maintain his federal habeas corpus application.

3. The fact that petitioner's probationary period of up to five years imposed on June 8, 1965 expires in a few months, of course does not affect his standing to

We are confronted therefore with the merits of his claim that Bumper v. North Carolina, *supra* is dispositive and renders his adjudication as a youthful offender invalid. Preliminarily, the power of the vice-principal to consent to the search follows from the affirmative obligations of school authorities to supervise the children entrusted to their care and the consequent retention of control by them over the lockers. See People v. Overton, 20 N.Y.2d 360, 363, 283 N.Y.S.2d 22, 229 N.E.2d 596 (1967). Similarly, the analogy to *Bumper* fails by virtue of this duty of supervision. "Not only have the school authorities a right to inspect but this right becomes a duty when suspicion arises that something of an illegal nature may be secreted there." *Id.*

The Court of Appeals held that the trial judge after a hearing denied the motion to suppress on the ground "that the vice-principal had consented to the search and that he had a right to do so." *Id.* at 361, 283 N.Y.S.2d at 23, 229 N.E. 2d at 597. Addressing the question of whether the consent was freely given or under compulsion of the invalid search warrant the Court held:

"\* \* \* Dr. Panitz [the vice-principal] testified that: 'Being responsible for the order, assignment, and maintenance of the physical facilities, if *any* report were given to me by *anyone* of an article or item of the nature that does not belong there, or of an illegal nature, I would inspect the locker.' (italics supplied.)

This testimony demonstrates beyond doubt that Dr. Panitz would have consented as he did regardless of the presence of the invalid search warrant." *Id.* at 362, 283 N.Y.S.2d at 23, 229 N.E.2d at 597.

On reargument to consider the effect of *Bumper*, the Court of Appeals reaffirmed its earlier position and held that there was no "lawful coercion" here:

"As the designated representative of the people of Mount Vernon, Dr. Panitz opened the locker, which was certainly not the private property of the defendant, in fulfillment of the trust and responsibility given him by the city residents through the Board of Education. Coercion is absent in this setting, having been displaced by the performance of a delegated duty. \* \* \* Contrasting the facts in this case with those in *Bumper*, it does not require extensive analysis to conclude that the 'situation instinct with coercion' which characterized the plight of Bumper's 66-year old grandmother can not be discerned where we find a public official performing a delegated duty by permitting an inspection of public property." 24 N.Y.2d at 526, 301 N.Y.S.2d at 481, 249 N.E.2d at 368.

We conclude that the appropriate constitutional standard was applied and that the factual determination that the vice-principal's consent to the search was voluntary and not induced by the invalid search warrant is in fact fairly supported by the record. See 28 U.S.C. § 2254(d). The vice-principal's affirmative response when asked if he were "honoring the search warrant" is not inconsistent with and does not undercut his statement that whenever in the course of his duties he received a report of the likelihood of the existence of an item of illegal nature in a locker assigned a student, he would undertake to inspect it.

Accordingly, the application for a writ of habeas corpus is denied.

So ordered.

---

maintain this application. It is even questionable whether a release now after the initiation of this action would render his suit moot. See Carafas v. LaVallee, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968). However, as a youthful offender the continuing disabilities might not suffice to give him a substantial stake in the judgment of conviction which survives the satisfaction of his sentence. *Id.*