Frederick Lee **WATERS**, Appellant,

v.

**UNITED STATES**, Appellee.

No. 6280.

District of Columbia Court of Appeals.

Argued July 25, 1972.

Decided Dec. 3, 1973.

John W. Sansing, Washington, D. C., court appointed, for appellant.

Joseph F. McSorley, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry, John J. Mulrooney and William E. Reukauf, Asst. U. S. Attys., were on the brief, for appellee.

Before REILLY, Chief Judge, and FICKLING and PAIR, Associate Judges.

REILLY, Chief Judge:

This is an appeal by an 18-year-old high school student from a conviction for unlawful possession of narcotics in violation of D.C.Code 1973, § 33–402. Prior to trial, appellant had moved to suppress as evidence an envelope containing tinfoil packets of heroin, which had been snatched from his hand on the grounds of Coolidge High School by a police officer assigned to duty at the school. The only question on appeal is whether the denial of this motion by the court below was error.

On the day of the challenged seizure, the police officer went to the cafeteria, where a group of schoolboys were shouting at a vice-principal who had just broken up a card game at which he had observed money being exchanged. The vice-principal told him he was dismissing (i. e., suspending) appellant and a fellow pupil for gambling, and that the officer was to arrest them if they did not leave the premises. Shortly thereafter the officer noticed appellant standing at the top of the steps outside the school building, trying to stuff some money into an envelope while another youth, an ex-student known to the police officer as a drug addict, was coming up the steps in appellant's direction. Each turned away when they perceived the officer was nearby, appellant closing his hand around the envelope.

The policeman asked appellant what was in the envelope. He replied, "nothing", as the officer was reaching for it. Appellant started to run but the officer succeeded in grabbing the bottom of the envelope which ripped in his hand as appellant fled down the steps. The remnant of the envelope in the police officer's possession contained five tinfoil packets and two small manila envelopes containing a white substance which, upon chemical analysis, proved to be heroin. A warrant for appellant's arrest was obtained and he was picked up several weeks later.

At the pretrial hearing the officer testified that appellant had previously been arrested for robbery and admitted to the use of drugs, and that while he saw nothing pass between appellant and the young man coming up the stairs toward him, he thought that appellant had just sold or was about to sell narcotics. He also testified that he had seen the kind of envelope he took from appellant used on five previous occasions in narcotic drug transactions at the same high school. On cross-examination, he stated that he had not placed appellant under arrest or even ordered him not to move.

Appellant argues that because he was not under arrest when the seizure of the envelope occurred, this action cannot be viewed as a search incident to arrest. Hence it is contended that the conduct of the police officer violated appellant's Fourth Amendment rights.

█ It is well settled, however, that a search or seizure may precede an arrest, provided the officer at that point already has probable cause to arrest the possessor of the items in question. Accordingly, if the officer in this case had sufficient cause to take appellant into custody even before he had actually seen the contents of the envelope, the denial of the motion to suppress was correct. Bailey v. United States,

128 U.S.App.D.C. 354, 357, 389 F.2d 305, 307 (1967); United States v. Gorman, 355 F.2d 151 (2d Cir. 1965). Whether there was such probable cause before the seizure of the envelope is the real question.

Relying on such recent decisions as Munn v. United States, D.C.App., 283 A.2d 28 (1971); Peterkin v. United States, D.C.App., 281 A.2d 567 (1971); and United States v. Brown, 150 U.S.App.D.C. 113, 463 F.2d 949 (1972), the government contends that the display of an envelope similar to those used in other narcotics transactions at that very school, the roll of money, the approach of a known addict, and the furtive reactions of appellant and his potential customer when the policeman appeared, provided the necessary ingredients of probable cause. On the other hand, it has been held that observation of a man conversing over a period of several hours with known narcotics users and the man's subsequent, sudden gesture of reaching into his pocket when accosted by a policeman, did not justify the latter in searching that pocket on his own and pulling out a quantity of heroin. Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 S.Ed.2d 917 (1967). On its facts, *Sibron* seems more analogous to the one before us than the authorities cited by the government. Moreover, in each of these cases, there were other circumstances not present here, which tended to justify the action taken by the police officer involved.

■ Therefore, although the question is a close one, we have concluded that the opinion of the Supreme Court in the *Sibron* case compels us to hold that the requisite elements of probable cause to arrest did not exist at the moment the envelope was seized. Thus the motion to suppress should have been granted on the testimony presented at the pretrial hearing.

In reluctantly reaching this conclusion because of the alarming number of incidents of narcotic trafficking in both private and public schools in this area, we examined a number of judicial decisions in other jurisdictions which have recognized that factors other than the rigid standard of probable cause to arrest may be taken into account when testing the reasonableness of the search on school property of a student's person or effects by a public school official. *See* People v. Jackson, 65 Misc.2d 909, 319 N.Y.S.2d 731 (App.Div. 1971), aff'd 30 N.Y.2d 734, 333 N.Y.S.2d 167, 284 N.E.2d 153 (1972) (forcible search of pockets yielding narcotics instruments); People v. Overton, 20 N.Y.2d 360, 229 N.E.2d 596, 283 N.Y.S.2d 22 (1967), vacated and remanded, 393 U.S. 85, 89 S. Ct. 252, 21 L.Ed.2d 218 (1968), reaff'd 24 N.Y.2d 522, 301 N.Y.S.2d 479, 249 N.E.2d 366 (1969) (inspection of locker).[1]

The leading case in those jurisdictions which have adopted this rule is the *Jackson* decision, *supra,* of the Appellate Division of the New York Supreme Court, decided on facts very similar to those in the case before us. There, an official called a "Coordinator of Discipline" became suspicious of a high school student he was escorting to the principal's office, and asked him to turn over the contents of a bulging pocket. The student fled. Catching up with him outside the school grounds, the school official seized narcotics instruments the student was attempting to conceal. In disagreeing with a decision upholding the validity of the seizure on *in loco parentis* grounds, a minority of the court noted that the prosecutor had conceded that the challenged seizure could not have been legally sustained if the "Coordinator" had been a police officer rather than a school official.

Thus, the New York courts might well have reached an opposite result in the case

---

1. Accord, In re State In Interest of G. C., 121 N.J.Super. 108, 296 A.2d 102 (1972); State v. Baccino, 282 A.2d 869 (Del.Super. Ct.1971). *But see contra,* Piazzola v. Wat-

kins, 442 F.2d 284 (5 Cir. 1971) and Commonwealth v. McCloskey, 217 Pa.Super. 432, 272 A.2d 271 (1970).

at bar. In other words, the rule of the *Jackson* case, should the courts of this jurisdiction see fit to follow it, is apparently limited to actions taken by teachers and other school disciplinary personnel.

Reversed.