## COMMONWEALTH *vs.* CRAIG A. CAREY.

Middlesex. March 7, 1990. - May 29, 1990.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & GREANEY, JJ.

*Search and Seizure*, Expectation of privacy, Locker, Student. *Constitutional Law*, Search and seizure, Privacy, Waiver of constitutional rights, Admissions and confessions.

Absent a specific finding by the judge who heard a motion to suppress a sawed-off rifle discovered in a warrantless search of a student's high school locker to the effect that students at the school had notice of a school policy making students' lockers subject to search by administrators, this court declined to address the issue whether the student had any expectation of privacy in his locker vis-à-vis school administrators where, in any event, the search was justified, in the circumstances of this case, under the Fourth Amendment to the United States Constitution. [531-533]

There was no error in the denial of a defendant's motion to suppress a sawed-off rifle discovered in a warrantless search of his high school locker where, on the basis of school administrators' preexisting knowledge of an earlier fight and the eyewitness report of two students that a gun linked to the fight was seen in the defendant's possession, together with the administrators' failure to find the gun on the defendant's person or at the places he had been most recently, the search of the locker was clearly based on common sense, and was reasonable both at its inception and in its scope. [533-536]

A review of the conduct and characteristics of a defendant charged with unlawful possession of a firearm, and the manner in which the police arrested and interrogated the defendant, disclosed no evidence on which the defendant's waiver of his Miranda rights could be found constitutionally invalid. [536-538]

COMPLAINT received and sworn to in the Woburn Division of the District Court Department on March 9, 1987.

On appeal to the jury session of the Lowell Division, a pretrial motion to suppress was heard by *John B. Murphy*, J.

An application for an interlocutory appeal was allowed by *Liacos*, C.J., in the Supreme Judicial Court for the county of Suffolk and the appeal was reported by him to the Appeals Court. The Supreme Judicial Court on its own initiative transferred the matter from the Appeals Court.

*James J. Long, Jr.*, for the defendant.

*Patricia M. Darrigo*, Assistant District Attorney, for the Commonwealth.

LYNCH, J. The defendant, Craig A. Carey, was found guilty of unlawful possession of a firearm after a bench trial in the Woburn Division of the District Court. He sought a de novo trial before a jury of six in the Lowell Division of the District Court, and in that proceeding filed a motion to suppress both a sawed-off rifle discovered in a warrantless search of his high school locker, and his statement to a police officer, acknowledging that the gun was his. After a hearing, the judge denied the defendant's motion on March 24, 1988. Carey filed an application for interlocutory appeal of that decision under Mass. R. Crim. P. 15 (b), as amended, 397 Mass. 1226 (1986). A single justice of this court allowed the application and reported the case to the Appeals Court. We transferred the case here on our own motion, and now affirm.

At the time of the events in question, the defendant, a young man seventeen years old about six weeks shy of his eighteenth birthday, was a senior at Woburn High School. On Monday morning, March 9, 1987, two students reported to their industrial arts teacher that Carey had just shown them a gun that he had brought to school in response to an altercation that occurred on the previous Friday afternoon. The teacher promptly relayed the information to assistant principal Paul Sweeney. While the teacher did not tell Sweeney the names of the students who had made the report, he assured the assistant principal that he knew them from having them in his class the past six months, and felt they were reliable.

Sweeney immediately told principal James Foley and housemaster Robert DeLuca of the possibility of a gun on school premises, and the three administrators decided on a

plan of action.[1] They determined to seek out Carey and, if they could find no evidence of a gun in his possession, to search the areas where he had been, and, if that course yielded no gun, to search Carey's locker.

While these administrators at Woburn High School had never handled a situation in which a student had brought a gun to school, the judge found that they had followed precisely the same steps on numerous prior occasions when they had a reasonable belief that a student had brought contraband to school. However, because in this instance the object of the search was either an armed student or a gun, Sweeney, DeLuca, and Foley agreed to take an extra precautionary measure — they called the police. The judge found that the police had no input into the school administrators' plan, and were notified for safety reasons.[2]

Detective Sergeant Robert Scire of the Woburn police department arrived at the high school within ten to fifteen minutes, and he and the school administrators questioned the defendant in a school office. When a search of the defendant and his most recent whereabouts failed to disclose a gun, DeLuca searched the defendant's locker. He discovered a dungaree jacket in which he found concealed a sawed-off .22 calibre rifle, a gun sight, a black powdery substance, and a bullet. DeLuca brought the jacket and the gun to Detective Scire.

After advising the defendant of his Miranda rights, the officer showed Carey the jacket and the gun and asked him whether they were his. After an initial disclaimer Carey acknowledged that they were. The judge found that the defendant was alert, calm, responsive, and cooperative in his inter-

---

[1] Prior to being alerted by the teacher of his two students' reports concerning Carey's possession of a gun, the school administrators had already been notified by another housemaster, Mr. Curran, of the Friday afternoon brawl between Carey and a former student, whom the administrators all knew.

[2] Assistant principal Sweeney testified that the school administrators were "very, very uptight and very nervous" about the possibility that there was a gun in the school, both for themselves and for the school community of some 1,200 students, and ninety to one hundred employees.

action with the police officer throughout this period, and that he understood and voluntarily waived his Miranda rights. He then denied the motion to suppress.

1. *Search of student's locker.* Any inquiry into the constitutional validity of the school officials' conduct must start with an examination whether this action constituted a search to which the Fourth Amendment to the United States Constitution is applicable.[3] As the Commonwealth concedes, school administrators are governmental actors to whose conduct Fourth Amendment strictures apply. *New Jersey* v. *T.L.O.*, 469 U.S. 325, 337 (1985). But the Fourth Amendment protects a person from governmental intrusions only when a "legitimate expectation of privacy [exists] in the particular circumstances." *Commonwealth* v. *Blinn*, 399 Mass. 126, 127, appeal dismissed, 482 U.S. 921 (1987), quoting *Commonwealth* v. *Podgurski*, 386 Mass. 385, 387 (1982), cert. denied, 459 U.S. 1222 (1983). See *Katz* v. *United States*, 389 U.S. 347 (1967). The test is whether the defendant had a subjective expectation of privacy, and if he did, "whether society is willing to recognize that expectation as reasonable." *Commonwealth* v. *Panetti*, 406 Mass. 230, 231 (1989). *O'Connor* v. *Ortega*, 480 U.S. 709, 715 (1987).

The Commonwealth asserts that any expectation of privacy a high school student might have in a locker vis-à-vis school administrators is unreasonable, and thus the Fourth Amendment does not apply. In *New Jersey* v. *T.L.O., supra,* the Supreme Court recognized, but did not decide, the issue of a student's expectation of privacy in such circumstance. *Id.* at 337 n.5. Most courts that addressed the issue prior to

---

[3]In neither his arguments before the motion judge nor his brief on appeal has the defendant interposed an assertion that the Massachusetts Declaration of Rights was violated by either the search or the use of the defendant's statement to the police. At oral argument, defense counsel stated he assumed he had raised that issue and that, in any event, this court would as a matter of course decide that issue anyway. Because the State constitutional argument was not raised below, we do not consider it here. *Commonwealth* v. *Shine*, 398 Mass. 641, 649 n.2 (1986). Nor need we pass on an argument not raised in the defendant's brief. Mass. R. A. P. 16 (a), as amended, 367 Mass. 921 (1975).

*T.L.O.* concluded that no such expectation of privacy exists because the lockers are school property, made available to students for the limited purpose of storing items legitimately on school premises. *People* v. *Overton*, 24 N.Y.2d 522, 525 (1969). Unlike the lessor of a rental locker in an airport or train station, these courts stress, the student shares joint custody of the locker with school administrators, who retain either combinations or master keys, and thus a right of access when there is reason to believe the locker is being used for illegitimate purposes. *Zamora* v. *Pomeroy*, 639 F.2d 662, 670 (10th Cir. 1981). *State* v. *Stein*, 203 Kan. 638, 640 (1969), cert. denied, 397 U.S. 947 (1970). See *Commonwealth* v. *Cadoret*, 388 Mass. 148, 150 (1983) (extent to which area is freely accessible to persons other than defendant and whether defendant controlled access to area relevant to expectation of privacy issue); *Commonwealth* v. *Royce*, 20 Mass. App. Ct. 221, 225 (1985) (while defendant may have used, and had key to, locker in basement of his grandparents' house, he had no right to exclude others from access to it, and therefore had no legitimate expectation of privacy in it). In the case at bar the judge found the defendant's homeroom teacher kept a list of locker assignments and corresponding combinations.

On the other hand, several courts have expressly held Fourth Amendment standards apply to the search of school lockers. *State* v. *Engerud*, 94 N.J. 331, 349 (1983). *State* v. *Michael G.*, 106 N.M. 644 (Ct. App. 1987). *In Interest of Dumas*, 357 Pa. Super. 294, 297 (1986). *State* v. *Joseph T.*, 336 S.E.2d 728, 736 (W. Va. 1985).

Most courts agree, however, that it is important to consider the effect of a school policy making the lockers subject to search by administrators. Some courts that have held there to be no reasonable expectation of privacy in a school locker have stressed the factor that such a policy exists. *Zamora* v. *Pomeroy*, *supra* at 671. *People* v. *Overton*, *supra* at 524. See also *O'Connor* v. *Ortega*, *supra* at 717 (while public employees have reasonable expectation of privacy in their offices, desks, and file cabinets, these expectations "may

be reduced by virtue of actual office practices and procedures, or by legitimate regulation"); 4 W.R. LaFave, Search and Seizure § 10.11(b), at 177 (2d ed. 1987) ("If the school authorities have made it clear that possession of the locker is 'nonexclusive against the school and its officials,' . . . the advance notice provides the student with an opportunity to limit the effect of the intrusion by not keeping highly personal materials in the locker provided by the school" [footnotes omitted]).

Although the judge found that the Woburn High School administrators had on several prior occasions searched students' lockers, as part of an over-all policy when they suspected a student had contraband at school, he made no specific finding whether there had been advance notice of this policy to students.

In the absence of such a specific finding below, we pass over the expectation of privacy issue because we conclude that the warrantless search of the locker was in any event justified under the Fourth Amendment.

In *New Jersey* v. *T.L.O.*, 469 U.S. 325 (1985), the United States Supreme Court held that school officials need not obtain a warrant, nor meet the standard of probable cause, in order to search a student under their authority. *Id.* at 340-341. Rather, the Court held such a search would pass Fourth Amendment muster if it were reasonable in all the circumstances. *Id.* at 341.

Concerns about school officials' vital responsibility to preserve a proper educational environment prompted the Court to adopt a reduced constitutional standard to validate student searches. "The special need for an immediate response to behavior that threatens either the safety of schoolchildren and teachers or the educational process itself justifies the Court in excepting school searches from the warrant and probable cause requirement." *Coffman* v. *State*, 782 S.W.2d 249, 251 (Tex. Ct. App. 1989), quoting *New Jersey* v. *T.L.O.*, *supra* at 353 (Blackmun, J., concurring). The Court recognized that a school administrator's task of maintaining discipline in the school has become a more difficult one, as "in recent

years, school disorder has often taken particularly ugly forms: . . . violent crime[s] in the schools have become major social problems." *New Jersey* v. *T.L.O.*, *supra* at 339. According to commentator LaFave, "[t]his concern has, if anything, heightened in recent years [since *T.L.O.*]." LaFave, *supra* at § 10.11(b), at 167.

The search here not only clearly met such a lesser test, but the facts suggest strongly that probable cause existed as well. On Monday morning, assistant principal Sweeney was told by a teacher, whom he regarded as extremely diligent and reliable from their eighteen years of working together, that two students in his class had reported to him that the defendant had shown them a gun he had brought to school as a result of the Friday afternoon brawl. The teacher assured Sweeney that he knew the students to be reliable.

Reasonable suspicion of wrongdoing is a " 'common-sense conclusio[n] about human behavior' upon which 'practical people' — including government officials — are entitled to rely." *New Jersey* v. *T.L.O.*, *supra* at 346, quoting *United States* v. *Cortez*, 449 U.S. 411, 418 (1981). "A student's direct statement to a person in authority, indicating personal knowledge of facts which establish that another student is engaging in illegal conduct, may provide school authorities reasonable grounds to search the second student's locker." *State* v. *Michael G.*, 106 N.M. 644, 647 (Ct. App. 1987).[4]

---

[4]Indeed, the eyewitness account of Carey's possession of a gun at school by two students to a teacher who knew them, may well have constituted probable cause to search Carey's school locker. These witnesses, or citizen-informants as they have been called, "are subject to much less stringent credibility verification requirements" than ordinary police informants, since the former generally lack the ulterior motives of the latter. *State* v. *Michael G.*, *supra* at 644. *United States* v. *Gagnon*, 635 F.2d 766, 768 (10th Cir. 1980), cert. denied, 451 U.S. 1018 (1981). Unlike the anonymous informer, the eyewitness students could be presumed reliable. *Commonwealth* v. *Bowden*, 379 Mass. 472, 477 (1980). *United States* v. *Rueda*, 549 F.2d 865, 869 (2d Cir. 1977). "If the citizen or victim informant is an eyewitness, this will be enough to support probable cause even without specific corroboration of reliability." *Allison* v. *State*, 62 Wis. 2d

Neither a search of Carey nor a retrace of his steps through a cafeteria and a classroom turned up the gun the two students reported seeing. On the basis of school administrators' preexisting knowledge of the defendant's Friday afternoon brawl and the two students' eyewitness report of a gun in the defendant's hands said to be linked to the Friday altercation, together with the failure to find the gun on the person of the defendant or at his most recent whereabouts, housemaster DeLuca's search of Carey's locker was clearly

---

14, 23, cert. denied, 419 U.S. 1071 (1974).

In addition to citizen-informers' first-hand basis of knowledge and presumed credibility, their reports usually arise in urgent situations requiring a prompt response, "so that a leisurely investigation of the report is seldom feasible." 1 W.R. LaFave, Search and Seizure § 3.4(a), at 718 (2d ed. 1987). The possibility of a gun in the possession of a high school student, in an institution of some 1,200 teenagers and ninety to one hundred adults, certainly presented the Woburn High School administrators with the emergency situation of the typical citizen-informant case. This exigency, together with the probable cause provided by the two students' reports, probably would have allowed police officers to conduct a search of an area in which the defendant had a reasonable expectation of privacy without a warrant under traditional Fourth Amendment principles. *Commonwealth v. Bradshaw*, 385 Mass. 244, 257 (1982) ("The Fourth Amendment does not require police officers to delay . . . if to do so would gravely endanger their lives or the lives of others," quoting *Warden, Md. Penitentiary v. Hayden*, 387 U.S. 294, 298-299 [1967]). *Commonwealth v. Marchione*, 384 Mass. 8, 12 (1981) ("An officer who has reasonable cause to believe that premises contain things likely to . . . cause death [or] serious bodily harm may, without a search warrant, enter and search such premises," quoting Model Code of Pre-Arraignment Procedure § 260.5 [Official Draft 1975]). *Michigan v. Tyler*, 436 U.S. 499, 509 (1978).

The defendant has argued that the search of his locker was directed by Detective Scire, and because of the involvement of the police, the probable cause standard rather than the *T.L.O.* standard of reasonable suspicion had to be met to justify the search. See *F.P. v. State*, 528 So. 2d 1253 (Fla. Dist. Ct. App. 1988). Because the motion judge expressly found school officials carried out the search on their own with no involvement of the police officer, and because we accept the judge's finding, which cannot be called clearly erroneous as it is supported by the record, *Commonwealth v. Day*, 387 Mass. 915, 919 (1983), we decide this case under the *T.L.O.* standard prescribed by the United States Supreme Court for searches of students by school officials. However, as our discussion indicates, we believe that, even if the search had been conducted by Detective Scire himself, the warrantless search would have been lawful under the Fourth Amendment as based on probable cause and exigent circumstances.

based on common sense, and was reasonable both at its inception and in its scope. See *State* v. *Michael G., supra* at 645-646 (a student's report to swimming coach, relayed to assistant principals, that defendant had tried to sell him marihuana, provided reasonable grounds for assistant principals' search of defendant's locker); *Coffman* v. *State*, 782 S.W.2d 249, 250 (Tex. Ct. App. 1989) (assistant principal's observation of defendant in school halls when class in session, defendant's furtive behavior upon questioning to produce a hall pass, and his remark to assistant principal that he had just returned from parking lot, which school official knew to be site of recent thefts, provided reasonable suspicion for search of defendant's bookbag, which turned up pistol); *State* v. *Slattery*, 56 Wash. App. 820, 825 (1990) (since student whom vice principal believed to be reliable told him defendant was selling marihuana in school parking lot and vice principal had heard reports in the past of defendant's involvement with drugs, vice principal had reasonable suspicion to launch search of defendant, his locker, and then his car parked in school lot); *State* v. *Joseph T.*, 336 S.E.2d 728, 737 (W. Va. 1985) (student's acknowledgment to assistant principal that prior to coming to school that morning he had drunk beer at defendant's home, gave assistant principal reasonable suspicion to search defendant's locker for alcoholic beverages he may have brought to school with him).

We affirm the judge's denial of the defendant's motion to suppress the sawed-off rifle found within the locker.

2. *The defendant's inculpatory statements.* The defendant asserts that the Commonwealth failed to prove beyond a reasonable doubt that, given his youth, his waiver of Miranda rights in the absence of either a parent or attorney was knowing and intelligent. See *Commonwealth* v. *A Juvenile*, 389 Mass. 128, 134 (1983). Furthermore, he claims his acknowledgment of ownership of the sawed-off rifle, coming after a promise by the police officer that "things would be better" for Carey if he told the truth, despite the officer's knowledge that unlawful possession of a firearm carried a

mandatory one-year jail sentence, was not voluntary beyond a reasonable doubt.[5] We disagree.

Although special circumstances must be shown for a waiver of the privilege against self-incrimination by a juvenile to be valid, *Commonwealth* v. *A Juvenile, supra,* the defendant in this case was age seventeen years and ten months at the time of his arrest. The defendant concedes that he "was no longer a juvenile," and indeed was being tried as an adult in this case. In these circumstances, the special scrutiny rules of *Commonwealth* v. *A Juvenile, supra,* do not apply.

The standard to be applied to the defendant's waiver, therefore, is whether it was knowing and intelligent in light of the "totality of the circumstances" leading up to the defendant's inculpatory statements. *Commonwealth* v. *Mandile,* 397 Mass. 410, 413 (1986). The court considers "the conduct and characteristics of the accused and the manner in which the interrogation itself is conducted" in reaching a conclusion as to the validity of the defendant's waiver. *Commonwealth* v. *Bradshaw,* 385 Mass. 244, 267 (1982).

The motion judge found that the defendant was fully apprised of his Miranda rights, understood them, and made a knowing, intelligent, and voluntary waiver of those rights. A judicial determination regarding Miranda waiver and voluntariness is "entitled to substantial deference by this court." *Commonwealth* v. *Day,* 387 Mass. 915, 920 (1983). *Commonwealth* v. *Mandile, supra* at 414. We see no basis to disturb the motion judge's findings.

Nor did the evidence require the conclusion that the defendant's statement was involuntarily given because it was induced by Detective Scire's "promise of hope" if he cooper-

---

[5]On appeal the defendant for the first time has argued a number of additional grounds for the exclusion of his self-incriminating statements to Detective Scire, none of which he raised before the motion judge, though all were available to him at the time. "Grounds not stated which reasonably could have been known at the time a motion is filed shall be deemed to have been waived." Mass. R. Crim. P. 13 (a) (2), 378 Mass. 871 (1979). See note 3, *supra.*

ated. In reaching a conclusion that a defendant's statement was voluntarily given, the court looks to whether, in the totality of relevant circumstances, "the defendant's confession was a free and voluntary act and was not the product of inquisitorial activity which had overborne his will." *Commonwealth* v. *Allen*, 395 Mass. 448, 455 (1985), quoting *Commonwealth* v. *Mahnke*, 368 Mass. 662, 680 (1975), cert. denied, 425 U.S. 959 (1976).

The judge did not find that any promise had been made, and the evidence was conflicting. Even if the judge had found that Detective Scire told Carey it would be "better" for him to admit to ownership if the jacket and gun were his, the conclusion that the defendant's admissions were involuntary would not be required. Initiation by the police interrogator of a discussion regarding leniency or a deal for the defendant, if the latter is forthcoming, is one of the many factors taken into consideration in assessing the voluntariness of a defendant's confession or self-incriminating statement. *Commonwealth* v. *Mandile, supra* at 413. A police officer may not assure the defendant that cooperation "will aid the defense or result in a lesser sentence." *Commonwealth* v. *Shine*, 398 Mass. 641, 652 (1986). That is not the same as a broad suggestion that it would be "better" for the defendant to tell the truth. *Id.* The motion judge found that the defendant voluntarily cooperated with the officer, and in light of the totality of the circumstances at Carey's fifteen-minute encounter with the police and school officials, we cannot say that the motion judge clearly erred. Therefore, we hold that there is no constitutional violation in the Commonwealth's use of the defendant's inculpatory statements.

The denial of the defendant's motion to suppress is affirmed.

*So ordered.*