COMMONWEALTH *vs.* JEFFREY SNYDER.

Berkshire. May 6, 1992. - August 25, 1992.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & GREANEY, JJ.

*Search and Seizure*, Expectation of privacy, Locker, Student, Probable cause. *Constitutional Law*, Search and seizure, Privacy, Admissions and confessions, Probable cause, Evidence obtained by private party. *Probable Cause. Practice, Criminal*, Disclosure of identity of informer.

A high school student had a reasonable expectation of privacy in his school locker, entitling him to contend that the action of school officials in conducting a warrantless search of the locker and seizing a quantity of marihuana found therein violated his rights under the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights to be free from unreasonable searches and seizures. [526-527]

The action of school officials, without the authority of a search warrant, in searching a high school student's school locker and seizing a quantity of marihuana found therein was reasonable in all the circumstances for purposes of satisfying the Federal constitutional test stated in *New Jersey* v. *T.L.O.*, 469 U.S. 325, 341 (1985). [527]

School officials, not acting on behalf of law enforcement personnel, were not required under art. 14 of the Massachusetts Declaration of Rights to obtain a search warrant before searching a high school student's school locker and seizing a quantity of marihuana found therein. [528]

School officials who conducted a warrantless search of a high school student's school locker and seized a quantity of marihuana found therein acted in a constitutionally reasonable manner for purposes of art. 14 of the Massachusetts Declaration of Rights, where the information furnished them by a known informant was sufficient to establish probable cause, and where the school officials' decision to search the locker, rather than confront the student, was appropriate in the circumstances. [529-530]

A high school principal and an assistant principal, not acting on behalf of law enforcement personnel, were not required to furnish Miranda warnings to a student before questioning him concerning his alleged possession of marihuana; thus the student's admissions to the school officials, as well as his later statement to a police officer, which he alleged was

tainted by the initial improper questioning, were properly admitted in
evidence at his trial on controlled substance charges. [530-532]
In the case of a high school student charged with controlled substance
offenses, a District Court judge acted within his discretion in denying
the defendant's pretrial motion for disclosure of the names of another
student and a faculty member who provided school officials with infor-
mation leading to a search of the defendant's school locker and seizure
of marihuana found therein. [532-533]

COMPLAINT received and sworn to in the Southern Berk-
shire Division of the District Court Department on January
17, 1990.

On appeal to the jury session of the Pittsfield Division, pre-
trial motions were heard by *Bernard Lenhoff*, J., and the case
was heard by *Rita S. Koenigs*, J.

The Supreme Judicial Court on its own initiative trans-
ferred the case from the Appeals Court.

*Juliane Balliro* for the defendant.

*Paul J. Caccaviello*, Assistant District Attorney, for the
Commonwealth.

WILKINS, J. This appeal concerns Jeffrey Snyder, who, at
the time of the events involved here, was an eighteen year old
high school senior in a Berkshire County regional high
school. Snyder challenges the admission of certain evidence
in his trial on charges of violation of the drug laws. School
administrators obtained some of that evidence during a war-
rantless search of the defendant's school locker and the bal-
ance of it during a subsequent interrogation of the defendant,
before which the administrators did not warn Snyder of his
rights, including his right to remain silent.

Snyder argues that, when the school administrators looked
for and took marihuana found in his locker, they violated his
constitutional rights against unreasonable searches and
seizures. He also contends that the school administrators vio-
lated his rights by not giving him Miranda warnings before
questioning him. During that questioning, the defendant con-
fessed to having sold a bag of marihuana to a fellow student

and to owning the three other bags of marihuana found in his locker.

We conclude that the defendant's arguments lack merit. We, therefore, need not consider the separate question whether, if one or more of his contentions were valid, the evidence obtained in violation of his rights should not have been admitted in evidence at his trial.

We recite facts that were found by the judge who denied the defendant's motion to suppress the evidence. We supplement them with details from the uncontroverted testimony of the school administrators and a Great Barrington police officer.

Linda Day, the principal of Monument Mountain Regional High School in Great Barrington, testified that about 12:45 P.M. on December 21, 1989, a faculty member came to see her. The faculty member reported that a student had said that the defendant had approached the student and had asked if the student wanted to buy some marihuana for twenty-five dollars. The faculty member had worked at the school for approximately fifteen years, had extensive contact with students, and had many times provided reliable information to school administrators. Principal Day asked John F. Canning, the assistant principal, to join them in her office, and the faculty member repeated the information. The faculty member added that the student had reported the attempted sale about 10:30 A.M. The student said that Snyder had showed the student a video cassette case that contained three bags of marihuana and that Snyder had then put the video cassette case in his book bag.

The school administrators decided to locate Snyder. Canning found Snyder in the student center, which was crowded with students. From a distance Canning could not see Snyder's book bag. Canning and Day then consulted. They did not know if other students were involved. Nor did they know the full extent of the marihuana. They did not want to arouse suspicion. The administrators decided not to approach Snyder in the student center but rather to wait until the beginning of the next school period (about 1:20 P.M.), when

Snyder was scheduled to be in a class, and then search Snyder's locker for the book bag. At that time, Canning and Day, using the combination to the locker that was available at the school's main office, opened the locker. They found the book bag, the video cassette case, and three bags containing marihuana. They took these items to Day's office and concealed them behind her desk.

Day then located Snyder and brought him to her office. There, in Canning's presence, Day asked Snyder if it was true, as reported to her, that he had offered to sell marihuana in the school. Snyder admitted that he had. Snyder, who was upset, said that he could not believe this was happening and that he had never done this before. He said that a friend had given him the marihuana to sell, that he had become troubled about doing it, and that he had called his friend to come to the school at two o'clock to take back what he had not sold. Snyder admitted that the book bag, the video cassette case, and the bags of marihuana were his. Snyder said that there had been four bags of marihuana but that he had sold one for twenty-five dollars to a student. Day called Snyder's mother, who came to the school. Canning called the police.[1] Snyder was allowed to meet with his girl friend alone in Day's office before the police came.

Shortly before two o'clock, Officer Beckwith of the Great Barrington police department arrived at the school. Day recited what Snyder had said; Beckwith gave Snyder his Miranda warnings; and Snyder confirmed that Day's recitation was true. Not long after that, the person who had provided Snyder with the marihuana, a graduate of the school, was located in the school.[2] Officer Beckwith took Snyder to the police station shortly before 2:30 P.M. where the officer again warned Snyder of his rights. Snyder signed a rights waiver

---

[1] The school had a policy of turning over to the police any drugs found on the school premises.

[2] That person was tried with Snyder, convicted, and sentenced. His case is not before us.

and gave a written statement, the substance of which Officer Beckwith testified to at Snyder's trial.

The motion judge denied Snyder's motion to suppress the evidence found in Snyder's locker and the admissions that Snyder made to Day, Canning, and Beckwith. The argument that the statements made to Beckwith should be suppressed, even though Beckwith had given the defendant Miranda warnings, was based on the theory that this evidence would not have been obtained if Day and Canning had not already violated Snyder's rights by failing to advise him of those rights. The motion judge concluded that, because Snyder had no reasonable expectation of privacy in his locker, the locker search did not violate Snyder's constitutional rights. He concluded alternatively that the school authorities had reasonable suspicion that a crime had been committed and that the search of Snyder's locker was, therefore, reasonable. He further concluded that the defendant's admissions were made in circumstances that were fair and proper.

Snyder waived a jury trial, and on April 8, 1991, a judge in the Pittsfield District Court found Snyder guilty of (1) illegal possession of a class D substance, (2) possession of a class D substance with intent to distribute it, and (3) possession of a class D substance with intent to distribute it in a school. The judge sentenced Snyder to one day in a house of correction on the charge of possession of a class D substance with intent to distribute it (G. L. c. 94C, § 32C [1990 ed.]), and two years in a house of correction, following service of the first sentence, on the charge of possession of a class D substance with intent to distribute it in a public high school (G. L. c. 94C, § 32J [1990 ed.]). The charge of simple possession was placed on file with the defendant's consent. The trial judge stayed execution of the sentence pending Snyder's appeal, which we transferred to this court.[3]

---

[3]The two-year sentence is a mandatory minimum term of imprisonment to be served after service of the sentence on the underlying crime. A person convicted of violating G. L. c. 94C, § 32J, must serve the mandatory minimum term of imprisonment before being eligible for parole, work release, or (except for limited special reasons) furlough. See G. L. c. 94C,

1. We consider first the question whether the search of Snyder's locker violated Snyder's rights.

The motion judge's conclusion that Snyder had no legitimate expectation of privacy in his school locker was wrong. Recent decisions elsewhere have recognized that, barring some express understanding to the contrary, students have a reasonable and protected expectation of privacy in their school lockers. See *State* v. *Engerud*, 94 N.J. 331, 348 (1983); *State* v. *Michael G.*, 106 N.M. 644, 646 (Ct. App. 1987); *In re Dumas*, 357 Pa. Super. 294, 297 (1986); *State* v. *Joseph T.*, 175 W. Va. 598, 606 (1985). In this case, the school administration explicitly acknowledged in the students' rights and responsibility code that each student had the right "[n]ot to have his/her locker subjected to unreasonable search." In light of this assurance from the school administration, it is especially clear that Snyder had a reasonable expectation of privacy in his locker that was entitled to constitutional protection. See *New Jersey* v. *T.L.O.*, 469 U.S. 325, 338 (1985); *Commonwealth* v. *Panetti*, 406 Mass. 230, 231 (1989). Because Snyder had such a reasonable expectation of privacy in his locker, he was entitled to argue that his Fourth Amendment right to be free from unreasonable searches and seizures was violated by the search of his locker and the seizure of the marihuana and to argue, therefore, that the evidence seized (and all evidence subsequently obtained as fruits of the unlawful seizure) must be suppressed.

---

§ 32H (1990 ed.). One might question the legislative judgment to impose a mandatory two-year sentence on an eighteen year old, first-time offender who sold only one bag of marihuana in the school, promptly admitted his error upon confrontation, immediately manifested remorse, and then identified his supplier. The defendant, however, does not challenge the constitutionality of the imposition of the mandatory sentence.

The defendant does challenge the mandatory, consecutive sentence on the ground that his right against being placed in jeopardy twice is violated by the imposition of two sentences for the same criminal act. In confronting the same argument the defendant now makes, we recently held that, where the Legislature is explicit, as here, in directing the imposition of two consecutive sentences for two crimes based on the same conduct, there is no violation of double jeopardy principles. *Commonwealth* v. *Alvarez, ante* 224, 232 (1992).

He was entitled to make a similar argument under art. 14 of the Massachusetts Declaration of Rights, both because he had a reasonable expectation of privacy in his locker and because he had automatic standing to challenge the lawfulness of the seizure of the marihuana (see *Commonwealth v. Frazier*, 410 Mass. 235, 242-244 [1991]), possession of which was an element of each crime with which he was charged.

We have little difficulty in concluding that the search conducted without the authority of a search warrant did not violate Snyder's rights under the Fourth Amendment to the United States Constitution. The test under the Fourth Amendment for school administrators is whether the search of the locker was reasonable in all the circumstances. See *New Jersey v. T.L.O.*, *supra* at 341; *Commonwealth v. Carey*, 407 Mass. 528, 533 (1990) (upholding warrantless search of student locker as not violating Fourth Amendment; defendant made no proper claim that search violated his parallel right under Constitution of Commonwealth). This Fourth Amendment test is a lower standard than the traditional one, which requires that there be a search warrant (barring circumstances excusing the use of a search warrant) and that there be probable cause to conduct the search.[4] Because, as we shall subsequently explain, there was probable cause to conduct the search, it follows logically that the lower Federal standard applicable here is satisfied. See *New Jersey v. T.L.O.*, *supra* at 341 ("reasonableness, under all the circumstances, of the search").[5]

---

[4]Probable cause for Fourth Amendment purposes means that there is reason to believe that a crime has been committed and that evidence of the crime will be found in the place to be searched. See *Beck v. Ohio*, 379 U.S. 89, 91 (1964). See also *Commonwealth v. Upton*, 394 Mass. 363, 370 (1985) ("a substantial basis for concluding that any of the articles described in the warrant are probably in the place to be searched").

[5]Although the Court's opinion in the *T.L.O.* case specifically disclaimed expressing "any opinion on the standards (if any) governing searches of [lockers, desks, or other school property]" (*New Jersey v. T.L.O.*, *supra* at 337 n.5), we are reasonably confident that the United States Supreme Court would impose no standard higher for testing the constitutionality of the search in the case before us than that stated in its *T.L.O.* opinion.

The more substantial issue in this case is whether the search and seizure was unreasonable under art. 14 of the Declaration of Rights of the Constitution of the Commonwealth. In construing the Constitution of the Commonwealth, we are not bound to follow the standards that the Supreme Court of the United States has adopted in applying provisions of the Constitution of the United States that are similar or even identical to provisions in the Commonwealth's Constitution. *Commonwealth* v. *Upton*, 394 Mass. 363, 372-373 (1985).

We agree with the Supreme Court of the United States that no search warrant was required. It is consistent with the requirements of art. 14, except where a school employee is explicitly acting on behalf of law enforcement officials, for a school employee to conduct a search and seize drugs (guns and other contraband) in a school without first obtaining a search warrant. See *New Jersey* v. *T.L.O., supra* at 340 ("The warrant requirement, in particular, is unsuited to the school environment: requiring a teacher to obtain a warrant before searching a child suspected of an infraction of school rules [or of the criminal law] would unduly interfere with the maintenance of the swift and informal disciplinary procedures needed in the schools"). See also *id.* at 351, 353 (Blackmun, J., concurring). There may be a question, as to a particular search, whether a school employee had a constitutionally adequate basis to conduct the search, and there may be a question about the scope of the search, but the absence of a search warrant will not be a disputable factor.[6]

---

[6]We suspect that in most instances the need to act promptly (i.e. exigent circumstances) would justify proceeding without a warrant on traditional principles. It appears that, in this case, any warrant requirement could be dispensed with in any event because of the imminent threat that marihuana would be removed from the school (or perhaps sold) before a warrant could be obtained. It seems that Justice Brennan was moved to agree that the warrant requirement should be dispensed with in school search cases because of the " 'exigency' — that is, from the press of time that makes obtaining a warrant either impossible or hopelessly infeasible." *New Jersey* v. *T.L.O., supra* at 353, 356 (Brennan, J., concurring in part and dissenting in part).

In deciding whether the search of the locker and the seizure of the marihuana was constitutionally unreasonable, we need not determine whether the requirements of art. 14 of the Declaration of Rights impose a stricter standard than does the Fourth Amendment. The uncontroverted evidence at the hearing on the defendant's motion to suppress shows that the school officials had probable cause to search the defendant's locker and, once they found the book bag, to search the bag and the video cassette holder. Certainly, art. 14 imposes no higher standard than probable cause. Cf. *Commonwealth v. Upton*, 394 Mass. 363, 370 (1985). Thus, if there was probable cause to search the locker when it was searched, the requirements of art. 14 were met.

We are not dealing here with an anonymous informant but rather with a known student who reported that he or she was an eyewitness to a crime. The faculty member to whom the student reported the defendant's attempt to sell marihuana had a well-established reputation for reliability. The school principal was justified in relying on the faculty member's report of what the student had said. The situation is similar to a known private citizen's eyewitness report to the police of a crime or an attempted crime, on which the authorities are entitled to rely. See *Commonwealth v. Carey*, 407 Mass. 528, 534 n.4 (1990); 4 W.R. LaFave, Search & Seizure § 10.11 (*b*), at 170 (2d ed. 1987).[7]

The remaining question is whether Principal Day and Assistant Principal Canning, armed with reliable information that Snyder had marihuana in his book bag, were unreasonable in searching the locker without first obtaining more information as to the whereabouts of the book bag. They made an attempt to do so. They discovered where Snyder was but concluded that they should not confront him in the student center. Their judgment that others might be involved and

---

[7]In similar circumstances in the *Carey* case, where, however, there were two student informers, this court did not have to pass on the issue but noted that the information provided by the known informants "may well have constituted probable cause to search [the defendant's] school locker." *Commonwealth v. Carey, supra* at 534 n.4.

that they should avoid arousing the suspicion of others was reasonable. Prompt action was needed to reduce the chance of further sales and removal of the marihuana from the school.

The school officials were justified in concluding that there was probable cause (1) to believe that marihuana was in Snyder's book bag and (2) to search the defendant and his locker because the book bag was probably either in the locker or with the defendant. Their decision to search the locker first, the less intrusive search, rather than to search the defendant first, was a reasonable judgment. The school officials complied with traditional search and seizure requirements. Consequently, the judge was correct in ruling that the evidence found during the locker search need not be suppressed.

2. Snyder argues next that the statements he made to the principal and assistant principal of his high school and to Officer Beckwith should have been suppressed. He contends that he was entitled to Miranda warnings before the principal and assistant principal interrogated him and that the taint of this improper questioning infected his admissions to Officer Beckwith, even though the officer had promptly given him Miranda warnings.[8]

Without advancing any separate reasoning, Snyder also contends that the questioning in the principal's office without the furnishing of Miranda warnings violated his privilege against self-incrimination stated in art. 12 of the Massachu-

---

[8]In *Miranda* v. *Arizona*, 384 U.S. 436, 444 (1966), the Supreme Court of the United States established certain warnings that law enforcement officers must give before questioning a suspect who is in custody or is deprived of his freedom in a significant way, if any statement made by the suspect is to be admissible in evidence against him. *Id*. at 476. "Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Id*. at 444. The Supreme Court adopted the rule stated in its *Miranda* opinion to protect an individual's Fifth Amendment privilege against self-incrimination. See *Commonwealth* v. *Mahnke*, 368 Mass. 662, 676 (1975), cert. denied, 425 U.S. 959 (1976).

setts Declaration of Rights ("No subject shall . . . be com-
pelled to accuse, or furnish evidence against himself"). We
have not adopted Miranda or some similar warnings as a
means of protecting State constitutional rights. There has
been no need to consider the question because Miranda
warnings furnish information about State constitutional
rights as well as rights contained in the Constitution of the
United States. This court, however, as an adjunct to Mi-
randa warnings, has provided additional protections under
the common law, protections that go beyond what the Su-
preme Court would require in similar circumstances as a
matter of constitutional imperative. See *Commonwealth* v.
*Smith,* 412 Mass. 823, 837 (1992); *Commonwealth* v. *A Ju-
venile,* 402 Mass. 275, 279 (1988), and cases cited. Snyder
makes no argument, however, that we should apply different
principles and reasoning under our law from those that the
Supreme Court has applied in its *Miranda* opinion and
subsequently.[9]

There is no authority requiring a school administrator not
acting on behalf of law enforcement officials to furnish Mi-
randa warnings. Even if we were to assume that, during the
questioning in the principal's office, the environment was co-
ercive because Snyder was in custody (or because his free-

---

[9]It is doubtful that we would require a school official to advise a student
that he or she is entitled to the presence of an attorney during questioning
or that an attorney would be appointed at public expense if that student
could not afford one. Perhaps as a matter of policy, however, where in-
criminating contraband has already been seized and where, pursuant to
established practice, the evidence is to be turned over to the police, a
school official about to question a student should warn that any statement
the student makes could be used as evidence against the student. This
point was not argued to the motion judge and is not argued to this court.

It should be noted that Snyder makes no claim that his admissions
amounting to a confession were not voluntarily made. He makes no sepa-
rate claim that he was intimidated or coerced or that his ability to reason
was in any way impaired.

A minor is entitled to an opportunity for meaningful consultation with a
parent or interested adult to ensure any waiver of rights is knowing and
intelligent unless the minor has attained the age of fourteen and has a high
degree of intelligence, experience, knowledge, or sophistication. *Common-
wealth* v. *A Juvenile,* 389 Mass. 128, 134 (1983).

dom was significantly restricted) and that, therefore, Miranda warnings would be required if the questioning had been by the police (see *Commonwealth* v. *Bryant*, 390 Mass. 729, 737 [1984]), Principal Day and Assistant Principal Canning were not law enforcement officials or agents of such officials. The Miranda rule does not apply to a private citizen or school administrator who is acting neither as an instrument of the police nor as an agent of the police pursuant to a scheme to elicit statements from the defendant by coercion or guile. See *Commonwealth* v. *Allen*, 395 Mass. 448, 453-454 (1985); *Commonwealth* v. *A Juvenile, supra* at 278-279. The fact that the school administrators had every intention of turning the marihuana over to the police does not make them agents or instrumentalities of the police in questioning Snyder.

The motion judge was correct in denying the motion to suppress the defendant's statements to the school administrators and Officer Beckwith.

3. The defendant raises one further point to which we have not yet adverted. He argues that the motion judge erred in refusing to direct the prosecution to disclose the name of the informants, the faculty member and the student. The judge ruled that disclosure of the identity of the faculty member and the student would discourage others from making similar disclosures. He concluded that they should be protected "from being bothered, harassed and probably confronted publicly by unthinking individuals." He also concluded that the defense provided no compelling reason for disclosure. The defendant moved for disclosure on the sole ground that the informants' identities would bear on the question whether the school administrators had probable cause to conduct the search.

The judge did not abuse his discretion in denying the request for disclosure. Generally nondisclosure of a source of information, which, as here, bears on a preliminary question, such as the suppression of evidence, is more readily tolerated than the nondisclosure at trial of a source of evidence, where guilt or innocence is directly involved. See *Commonwealth* v.

*Amral*, 407 Mass. 511, 518 (1990); *Commonwealth* v. *Lugo,* 406 Mass. 565, 571 (1990). The government's privilege not to disclose the identity of an informant, which is not absolute, should be respected as far as reasonably possible consistent with fairness to a defendant. *Commonwealth* v. *Douzanis,* 384 Mass. 434, 441 (1981). In the circumstances, the defendant's argument for disclosure is not based on any demonstration that the identity of these informants would have been helpful to him or even might have been helpful to him, beyond the speculation that something beneficial might have been discovered. That mere possibility has not been enough to require disclosure of informants in circumstances like those of this case.

*Judgments affirmed.*