Toomey, J.
INTRODUCTION
Defendant has moved to suppress evidence of uncounselled statements he made to law enforcement officers of the Commonwealth. He alleges that, although he was properly advised of his Miranda rights, his mental condition rendered him incapable of knowingly, intelligently, and voluntarily waiving those rights. Furthermore, he contends that the statements he made were involuntary by reason of his mental condition. Accordingly, he concludes that his statements should be suppressed.
The Commonwealth disagrees and suggests that the evidence adduced at the hearing demonstrates that defendant’s waiver was constitutionally compliant and his statements voluntary. This court determines that, for the reasons stated infra, the Commonwealth has the better of the argument and the challenged evidence will not be suppressed.
FACTS
1. Defendant served in the United States Navy from approximately 1962 to 1964. He was discharged because he had become disabled after suffering a head injury when struck by a cargo loading boom.
2. Either while in the Navy or shortly after his discharge, defendant was diagnosed as afflicted with schizophrenia, paranoid type, and that diagnosis has persisted at least through the January 6, 1997, competency evaluation undertaken in connection with the instant matter. (Exh. M4.)
3. From time to time during the period between his separation from the Navy and the present, defendant obtained prescription drugs to medicate his various mental and physical ailments. (Exh. Ml.)
4. In the late fall of 1996, allegations were made that the defendant had committed unlawful acts of sexual abuse upon a person under the age of fourteen years. Law enforcement authorities were, of course, interested in inquiring of the defendant, and, in mid-December, 1996, they invited him to appear at the Fall River Police Station for an interview.
5. Several days prior to the interview, the defendant, desirous of consuming a “couple of beers” but fearful that such consumption would be injurious in view of his regimen of medications, stopped taking the medication. Although he did not get to the point where he drank any beer, the interruption of the course of his medication had, according to his testimony, a profound effect upon his mental well-being. The result was that he began to hear “voices” that had been suppressed by the medication, and those “voices,” which he assumed all persons hear from time to time, continued through his interrogation. The voices did not tell him the particulars of what he was to say to the police but, in general, urged him to admit his guilt. [1]
6. Defendant and his girlfriend reported to the Fall River Police Station at about 9:00 a.m. on December 24, 1996.
7. During preliminary discussions prior to the Miranda advisement, the defendant had informed the officers that he was “on” medication, but he did not reveal that he had ceased taking the medication a few days earlier. Similarly, he did not inform the police that he was hearing “voices.”
8. Defendant’s appearance, demeanor and speech throughout the interview were unremarkable. He was readily responsive to the police and his answers were appropriate to the questions. He was not hesitant or reluctant in his replies. He provided apparently correct information with respect to his place of birth, education level, VA compensation, prior addresses, SSAN, and date of birth. He exhibited no indication of mental distress or feelings of compulsion. The “voices” had no impact upon his comprehension of the police questions and their purpose nor upon his will.
9. Before commencing the interview, Fall River Police Detective Dispiiito fully informed the defendant of his Miranda rights. She read aloud the rights form, and, after each right, the defendant responded that he understood the right. Moreover, the defendant, who acknowledged that he was able to read, appeared to read the rights form as Detective Dispirito recited its contents. Defendant did not express any confusion or misunderstanding with respect to his rights. He signed the rights form at 9:14 a.m., thereby signifying a waiver of his rights and a willingness to respond to interrogation. (Exh. M3.)
10. The interview totaled 30 minutes. At first, the defendant denied the allegation at bar and allegations *210 concerning a Rhode Island indictment for child molestation. When, after about 20 minutes of interrogation, one of the officers observed that he found the alleged victim’s accusation to be believable, the defendant complimented the officers on their interrogation technique[2] and made the admissions now sought to be suppressed.
11. On January 6, 1997, the defendant was examined at Bridgewater State Hospital pursuant to G.L.c. 123, §15(b). The observations of defendant by the examiner included the following:[3]
“easily distracted by questions” (p. 7);
“showed no disruptions in the form and content of his thought . . . thoughts were goal-directed and logical.” (p. 7);
“did report some paranoid thoughts”; “cognitive functioning appeared somewhat impaired” (p.7);
“oriented to time, knew who he was and knew where he was” (pp. 7-8);
“his short term memory . . . was intact” (pp. 7-8); “his long term memory for significant events also appeared unimpaired” (p. 8);
“attention and concentration appeared grossly intact” (p. 8);
“estimated intelligence is in the low average range” (p. 8);
“current insight and judgment appeared impaired by significant anxiety” (p. 8); and
“appeared overwhelmed when given choices, but on each occasion he identified correct choices.” (p. 10.)
The clinician concluded that defendant “suffers from a mental illness . . . Schizophrenia, Paranoid Type . . . manifested by concrete and simplistic thinking.” (p. 10.) Defendant “continues to have auditory hallucinations which seem to be more pronounced at times of stress.” (p. 10.) His “current symptoms ... do not significantly compromise . . . his ability to participate meaningfully and rationally in the preparation and implementation of a defense.” (p. 10.) Defendant possesses “a basic grasp of the adversarial nature of the trial process,” and he “appeared to quite clearly understand which questions he did not know the answers to and which terms and processes he needed more information on.” (p. 10.) The clinician also noted that, “.. . he will need to have things explained to him in a simple and straightforward manner,” and “. . . with the assistance of counsel [he] . . . will be able to make meaningful decisions about legal matters ... in the trial process.” (p. 11.) “His schizophrenia is relatively stable and does not significantly impair competency-related abilities . . . Mr. Cory was able to be reassured and was clearly able to listen and respond to recommendations and/or factual information ...” (p. 11.)
DISCUSSION
Where defendant’s admissions are obtained through an uncounselled, custodial interrogation, the law demands that the prosecution demonstrate that the circumstances in which the admissions were made comply with constitutional requirements. Miranda v. Arizona, 384 U.S. 436 (1966). In order to bear that burden, the Commonwealth is compelled to prove that the defendant was fully apprised of his Miranda rights, id. at 476, that the defendant waived those rights in a knowing, intelligent and voluntary manner, id. at 44, and that the defendant voluntarily chose to utter his admissions. Jackson v. Denno, 378 U.S. 368 (1964). See also, Edwards v. Arizona, 451 U.S. 477 (1981). Upon the Commonwealth rests the “heavy” burden of proving both waiver, Miranda, supra, at 475, and voluntariness. Commonwealth v. Koney, 421 Mass. 295, 305 (1995). Both burdens must be borne by the Commonwealth’s adducing evidence beyond reasonable doubt. Commonwealth v. Magee, 423 Mass. 381, 386 (1996) (waiver); Commonwealth v. Selby, 420 Mass. 656, 663 (1995) (voluntariness). At bar, the evidence demonstrates that the Commonwealth has satisfied both aspects of its obligation.
It is beyond dispute that Officer Dispirito properly advised defendant of his Miranda warnings. And, although, at the time, defendant may well have been somewhat encumbered with a mental condition occasioned by his chronic paranoid schizophrenia and by the recent interruption of his medication, that condition had de minimus effect upon defendant’s capacity to waive his Miranda rights. The observations of the officers who attended the interrogation and the conclusions of the clinicians who, shortly thereafter, evaluated defendant’s competence to stand trial — a not entirely dissimilar inquiry to that we now engage — strongly suggest that defendant’s mental condition was no impediment to a knowing, intelligent and voluntary waiver. Consequently, I find, beyond reasonable doubt, that defendant was aware that, by waiving, he was relinquishing certain rights, that defendant comprehended the nature of the rights he was relinquishing and that defendant chose to waive by a free and rational exercise of his will. See, generally, Commonwealth v. Prater, 420 Mass. 569, 578-79 (1995).
With respect to the voluntariness of the admissions, employment of a “totality of the circumstances" view, Commonwealth v. Tavares, 385 Mass. 140, 146 (1982), establishes that defendant’s decision to speak was “a free and voluntary act and was not the product of inquisitional activity which had overborne his will." Commonwealth v. Carey, 407 Mass. 528, 537-38 (1990), quoting, inter alia, Commonwealth v. Mahnke, 368 Mass. 662, 680 (1975). The police conduct at bar was wholly noncoercive. Not only did they eschew overt intimidation, subtle *211 persuasion and inappropriate inducements, but they resisted the opportunity to take advantage of defendant’s mental deficits. And, there was no aspect ofdefendant’smental circumstances that, eitherapart from or in conjunction with the police conduct, rendered his responses involuntary. Commonwealth v. Paszko, 391 Mass. 164, 175 (1984) (no per se exclusion by reason of drug withdrawal); Commonwealth v. Fielding, 371 Mass 97, 111-12 (1976) (see especially p. 111, n. 19). The evidence portrays, beyond reasonable doubt, the defendant as engaged in the free exercise of a rational intellect without impairment of his capacity to choose between alternative courses of action [viz, to talk or not to talk). His determination to respond to the police inquiry was, therefore, voluntary. See Commonwealth v. Prater, 420 Mass. 569, 578-79 (1995); Commonwealth v. Wallen, 35 Mass.App.Ct. 915, 917 (1993).
CONCLUSION
The Commonwealth having established beyond reasonable doubt that defendant’s waiver of his Miranda rights were knowing, intelligent and voluntary and that his responses to police interrogation were voluntary, defendant’s motion to suppress his admissions is DENIED.

 Defendant could not recall the particulars of the content of the conversations conveyed by the "voices.”

 Defendant said, “Boy, you guys are good.”

 Page references are to Exh. M4.