COMMONWEALTH vs. LAWRENCE L., a juvenile.

Essex. May 8, 2003. - July 23, 2003.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Controlled Substances. Search and Seizure,* Student, Probable cause. *Constitutional Law,* Probable cause, Evidence obtained by private party. *Probable Cause. School and School Committee,* School principal.

Discussion of the prohibition of the Fourth Amendment to the United States Constitution against unreasonable searches and seizures in the context of searches conducted by public school officials. [820-821]

A trial court judge correctly denied a motion to suppress evidence discovered by a school's vice-principal upon searching a student, where the vice-principal was not acting as an agent of law enforcement, and where a memorandum between the police and the school requiring school officials to report to the police controlled substances found in students' possession did not elevate the vice-principal to an agent of the police. [821-822]

A school vice-principal's search of a student was reasonable where the vice-principal had probable cause to search the student based on the odor of marijuana emanating from the student, the vice-principal's knowledge of a recent incident of the student possessing marijuana, and the student's response to an inquiry regarding whether he had been smoking marijuana. [822-824]

COMPLAINTS received and sworn to in the Essex County Division of the Juvenile Court Department on January 22, 2001.

A pretrial motion to suppress evidence was heard by *Michael F. Edgerton,* J.

An application for leave to prosecute an interlocutory appeal was allowed by *Cordy,* J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him to the Appeals Court. The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Barbara Kaban* for the juvenile.

*Robert J. Bender,* Assistant District Attorney, for the Commonwealth.

IRELAND, J. The juvenile was charged with unlawful posses-

sion of marijuana. It was discovered during a search by the vice-principal, who had called the juvenile from class in order to speak with him about an unrelated matter. The juvenile claims that when the vice-principal performed the search, he (1) was acting as an agent of the police pursuant to a memorandum of understanding between the Lynn public schools, the Lynn police department, and the Essex County district attorney's office; and (2) lacked probable cause to perform the search. Thus the juvenile claims that the marijuana found during the search was obtained in violation of his rights under the Fourth Amendment to the United States Constitution and, alternatively, in violation of art. 14 of the Massachusetts Declaration of Rights. After an evidentiary hearing, a Juvenile Court judge denied the juvenile's motion to suppress. A single justice of this court allowed the juvenile's application for an interlocutory appeal. The case was transmitted to the Appeals Court, and we transferred it to this court on our own motion. Because the vice-principal was not acting as an agent of the police and he had probable cause to search the juvenile, the search did not violate the juvenile's Federal or State constitutional rights. We affirm.

I. *Background.*

We recite the facts as found by the motion judge. On January 22, 2001, Vice-Principal James Ridley of the Breed Middle School in Lynn received information that there were going to be "problems" after school involving a certain group of students who wore blue bandanas. Ridley went around the school to speak with juveniles who wore blue bandanas, inform them that he was aware of the issue, and request that they all go directly home from school that day. At some point in the afternoon, Ridley removed the juvenile from class because he was known to have worn a blue bandana in the past. As he was speaking with the juvenile, Ridley became aware of a very strong smell of marijuana emanating from the juvenile. Ridley testified that the juvenile "reek[ed]" of marijuana. He asked the juvenile if he had been smoking marijuana, and the juvenile replied, "No, I don't do that here anymore." Based on his knowledge of a previous incident in which he found the juvenile in possession of marijuana while in school, coupled with the strong odor emanating from him, Ridley decided to search the juvenile and

asked him to empty his pockets. The juvenile removed a folded piece of paper from his back pocket that contained marijuana. Ridley subsequently contacted the juvenile's parents and the police, and the juvenile was placed in custody.

The juvenile was subsequently charged with two counts of possession of marijuana: one charge relating to this case, and the second charge relating to a search one month earlier. The juvenile filed a motion to suppress[1] and argued that the search of his person violated the Fourth and Fourteenth Amendments to the United States Constitution, as well as art. 14. He introduced a memorandum of understanding between the police and the Lynn schools that contained guidelines for school officials to report detected criminal behavior to the police. The memorandum begins with the following preamble: "The Lynn Public Schools, the Lynn Police Department, and the Essex County District Attorney's Office agree to coordinate their *response* to violent, delinquent, or criminal acts by students and to alcohol and drug use, which occur on school premises or at school-sponsored or school-related events" (emphasis added). It goes on to state the objectives of the memorandum, one of which is to "develop and implement a process for school officials and local police to coordinate a response to criminal/ delinquent behavior," and to refer first-time offenders to an alternative program that, on successful completion, will leave the juvenile with no court record. Additionally, the memorandum states, "While acknowledging that school officials are not agents of the police, and the Commonwealth and police are not agents of the schools, the school and police should develop policies and protocols for coordinated efforts." Finally, the memorandum defines mandatory and discretionary reportable acts, and requires

---

[1]The juvenile had moved to suppress the discovery of marijuana at issue here, as well as marijuana discovered during another search by Ridley one month prior to this incident. In December, 2000, Ridley found the juvenile in possession of marijuana the day after receiving a report from a teacher that the juvenile smelled of marijuana. The marijuana evidence obtained by Ridley in the December search was suppressed because the information conveyed to him by a teacher (that the juvenile smelled of marijuana) was from the previous day, and the juvenile no longer smelled of marijuana when the search was conducted. The suppression of the marijuana from the December search is not before us.

that contraband recovered from the student, pursuant to a search by school officials, be turned over to law enforcement.

The juvenile argued that this agreement transformed the school officials into agents of the police. The motion judge made several findings: (1) the school official was not acting as an "agent[] of the police" because the police "had no input into the search" of the juvenile, and because the memorandum simply memorialized the school's decision to enforce a "zero tolerance" policy toward responding to criminal activity; (2) there was no probable cause to search the juvenile because Ridley had not been "provided with reliable information that the controlled substance was on the person of [the juvenile]"; (3) there was reasonable suspicion to search the juvenile based on the aroma and on Ridley's preexisting knowledge, and therefore no violation of the Fourth Amendment following *New Jersey* v. *T.L.O.*, 469 U.S. 325 (1985); and (4) art. 14 also requires only a reasonable suspicion to conduct school searches.

II. *Discussion.*

"In reviewing the denial of a motion to suppress, we accept the motion judge's subsidiary findings of fact absent clear error." *Commonwealth* v. *Yesilciman*, 406 Mass. 736, 743 (1990), and cases cited. "We will, however, independently review the correctness of the judge's application of constitutional principles to the facts found." *Commonwealth* v. *Molina, ante* 206, 208 (2003), citing *Commonwealth* v. *Eckert*, 431 Mass. 591, 593 (2000).

"It is well settled that the Fourth Amendment's prohibition on unreasonable searches and seizures applies to searches conducted by public school officials." *Commonwealth* v. *Damian D.*, 434 Mass. 725, 727 (2001), citing *New Jersey* v. *T.L.O.*, *supra* at 333; *Commonwealth* v. *Carey*, 407 Mass. 528, 531 (1990). See also *Commonwealth* v. *Snyder*, 413 Mass. 521, 526 (1992). In the school environment, however, the typical requirements of warrant and probable cause are relaxed when a school official conducts a search of a student. See *New Jersey* v. *T.L.O.*, *supra* at 340-342 & n.7. The relaxation of the warrant and probable cause requirements of the Fourth Amendment are only applicable to school officials who are not acting "in conjunction

with or at the behest of law enforcement agencies." *Id.* at 341 n.7.

1. The juvenile claims that the memorandum between the police and school created a relationship that resulted in school officials becoming agents of the police. We disagree. The memorandum requires school officials to notify police if a student is found to possess a controlled substance illegally, but does not require school officials to search students for controlled substances. In fact, the memorandum only advises school officials that they may search a student's clothing at the discretion of the principal if "there is a reasonable basis for believing that the student is concealing [illegally possessed controlled substances]." In simple terms, this is precisely what the *T.L.O.* case allows, see *id.* at 341, and a memorandum correctly describing the principal's authority to conduct a search does not transform the principal into an agent of the police, or transform a search by a school official into one undertaken at police instigation.

The juvenile models his argument on the recent case of *Ferguson* v. *Charleston*, 532 U.S. 67 (2001). At issue was the propriety of suspicionless drug testing performed on pregnant women seeking obstetrical care at a local hospital. See *id.* at 70-74. The Court held that "performance of a diagnostic test to obtain evidence of a patient's criminal conduct for law enforcement purposes is an unreasonable search [absent consent]." *Id.* at 69-70. The major difference, however, was that the drug tests in the *Ferguson* case were not based on probable cause or even a reasonable suspicion of drug use. See *id.* at 76-77 n.10. Rather, the hospital sought to invoke the special needs exception to the Fourth Amendment that allows suspicionless searches in "exceptional circumstances. . . [that] make the warrant and probable cause requirement impracticable." *Id.* at 74 n.7, quoting *New Jersey* v. *T.L.O.*, *supra* at 351 (Blackmun, J., concurring in the judgment).

The case we are faced with is fundamentally different on many fronts. In the *Ferguson* case, patients were subjected to unnecessary medical tests meant to coerce them into drug treatment. The police were integrally involved in all aspects and development of the plan, and the Court held that, "[i]n this

case, a review of the [hospital] policy plainly reveals that the purpose actually served . . . 'is ultimately indistinguishable from the general interest in crime control.' " *Id.* at 81, quoting *Indianapolis* v. *Edmond*, 531 U.S. 32, 44 (2000).

Although the *Ferguson* case presents the similarity of an agreement between law enforcement and public employees, the school setting and ultimate interests involved here differ substantially, and thus the juvenile's Fourth Amendment rights are more properly governed by *New Jersey* v. *T.L.O., supra* at 340-342. In *T.L.O.,* the Supreme Court recognized the particular interests of school officials in maintaining a safe learning environment and taking swift disciplinary action. *Id.* Because the memorandum between school officials and police does nothing more than provide guidelines for school officials to contact law enforcement in the event that students are found illegally to possess controlled substances, it does not elevate school officials to agents of law enforcement. The memorandum states, "It continues to be the sole prerogative of school officials to impose discipline for infractions of school rules and policies." While the memorandum specifies that certain criminal acts are to be reported to the police (termed "mandatory reportable act[s]"), there is no penalty for the nonreporting of infractions, or any other enforcement mechanism to ensure school officials report such infractions. This reporting policy is consistent with the unique responsibility of school officials to maintain a safe scholastic environment; it seeks to ensure that school officials act in a consistent manner in the event that illegal activities are uncovered on school property. There is no evidence that the police "directed, controlled, or otherwise initiated or influenced" Ridley's search of the juvenile, nor does the memorandum serve to elevate him to an agent of the police. See *Commonwealth* v. *Ira I., ante* 805, 812-814 (2003).

2. Because Ridley was not acting as an agent of the police, he was exempt from obtaining a search warrant and must only demonstrate that the search was reasonable in all of the circumstances. *New Jersey* v. *T.L.O., supra* at 341. Under the Fourth Amendment, for a school search to be reasonable it must have been justified at its inception and limited in its scope "to the circumstances which justified the intrusion in the first

place." *Commonwealth* v. *Damian D.*, *supra* at 728, citing *New Jersey* v. *T.L.O.*, *supra* at 341. "This Fourth Amendment test is a lower standard than the traditional one, which requires that there be a search warrant (barring circumstances excusing the use of a search warrant), and that there be probable cause to conduct the search." *Commonwealth* v. *Snyder*, *supra* at 527. The judge determined that while there was reasonable suspicion to search the juvenile, Ridley lacked probable cause. Probable cause under the Fourth Amendment means that there is reason to "believe that a crime has been committed and that evidence of the crime will be found in the place to be searched." *New Jersey* v. *T.L.O.*, *supra* at 355, and cases cited. After reviewing the totality of the circumstances surrounding the search, we conclude that there was in fact probable cause.

Ridley had several pieces of information that, when combined, meet the more stringent test of probable cause under the Fourth Amendment. First, Ridley testified that he spoke to the juvenile after 1 P.M.,[2] at which time the odor of marijuana was "reeking off of [the juvenile]." Given the strong odor and the time of the conversation, it was reasonable for Ridley to believe that the juvenile had smoked marijuana very recently, while on school grounds. Second, Ridley had knowledge of a previous incident that had occurred just one month earlier where, after being advised by a teacher that the juvenile had smelled of marijuana, he searched the juvenile and found marijuana in his pocket. See note 1, *supra*. Third, when asked if he had been smoking marijuana, Ridley testified that the student responded, "No, I don't do that here anymore."

The most powerful evidence was the strong smell emanating from the juvenile. The Supreme Court's decision in *Johnson* v. *United States*, 333 U.S. 10, 13 (1948), established that odors alone may be sufficient to satisfy the probable cause requirement of the Fourth Amendment: "If the presence of odors is testified to before a magistrate and he finds the affiant qualified to know the odor, and it is one sufficiently distinctive to identify a forbidden substance, this Court has never held such a basis

---

[2]It was during the last lunch period, between 12:30 and 1 P.M., that Ridley received the information concerning potential problems after school. He subsequently began speaking with students who wore blue bandanas.

insufficient to justify issuance of a search warrant." See 2 W.R. LaFave, Search and Seizure § 3.6(b), at 290, 291 (3d ed. 1996) ("it [is] clear that probable cause may be established [by an officer's sense of smell]"). Ridley testified that he had smelled marijuana before and was able to identify the odor emanating from the juvenile.[3] With the odor of marijuana so strong and the search conducted so late in the school day, it is reasonable to infer that the juvenile perpetrated the crime while in the confines of the school and would have marijuana on his person. These facts alone were sufficient to establish probable cause for Ridley to search the juvenile. Ridley also was aware that a recent search of the juvenile during school had yielded marijuana. Although the marijuana recovered from this prior search was ruled inadmissible, Ridley's knowledge of that incident may still be used to determine whether Ridley had probable cause for the search at issue. See *Brinegar* v. *United States*, 338 U.S. 160, 173 (1949). This knowledge was more than the unsupported assertion of criminal reputation that is described in *Spinelli* v. *United States*, 393 U.S. 410, 418 (1969): "simple assertion of police suspicion is not itself a sufficient basis for a magistrate's finding of probable cause."

In addition to the prior knowledge of marijuana possession and the odor of marijuana, when Ridley asked the juvenile whether he was smoking marijuana, the response was, "I don't do that *here* anymore" (emphasis added). At best, the response was ambiguous. While denying he was currently smoking marijuana, the response indicated that the juvenile had in fact smoked marijuana in the past, but no longer smoked it while in school. It also served as an admission that the juvenile, who "reek[ed]" of marijuana, did on previous occasions smoke marijuana at school.

Because we find that there was probable cause to search the juvenile, we need not address the juvenile's claim that art. 14 imposes a stricter standard than reasonableness. See *Commonwealth* v. *Snyder*, *supra* at 529 (holding art. 14 does not require warrant for school search, and art. 14 "imposes no higher standard than probable cause").

---

[3]The judge credited Ridley's testimony as to his ability to identify the odor of marijuana, and we have no reason to conclude that such reliance was clearly erroneous.

III. *Conclusion.*

Because there was probable cause to search the student and the vice-principal was not acting as an agent of law enforcement, the order of the Juvenile Court denying the motion to suppress is affirmed.

*So ordered.*