Kern, Leila R., J.
The defendant was indicted in September of 2010 on the charge of trafficking in Oxycodone over 28 grams. Defendant now moves to suppress all tangible and intangible evidence obtained during a police search of his person and the 2009 Silver Range Rover he was driving. The basis for the motion is that the police lacked reasonable suspicion to approach the Range Rover and the defendant’s consent to search the car was not voluntary. For the reasons contained herein, the motion is DENIED.
BACKGROUND
On May 30, 2010, at about 8:30pm, Officer Sacco, an officer with the Medford Police Department, was on detail around Alexander Avenue in Medford. He was there because the Mystic Valley Housing Authority had requested detail due to the high crime rate—primarily domestic violence and drugs—in the area. Officer Sacco himself had made several arrests in the area and, within the previous month, had made an arrest at 125 Alexander Avenue for cocaine trafficking. That evening, Sacco observed two vehicles, a black Nissan Maxima and a silver Range Rover with New Hampshire license plates, in the process of parking along Alexander Avenue. The engines of both cars remained running once they were parked. As Sacco continued to watch the vehicles, he saw the driver of the Nissan exit his vehicle and approach the front passenger door of the Range Rover, looking up and down the street as he proceeded. Upon noticing Officer Sacco’s marked cruiser, the driver of the Nissan hesitated and started back towards his car before continuing on his original path and entering the front passenger side of the Range Rover. Based on the New Hampshire license plates[1] and his knowledge and experience with street-level drug transactions, Sacco believed he was witnessing a drug transaction. Sacco pulled up beside the Range Rover, leaving about four (4) feet between the two cars. The resulting encounter between the defendant and Sacco resulted in a search of the defendant and of the Range Rover, during which police found a significant amount of cash, packaged in a manner consistent with drug distribution, and 290 Oxycontin pills. The defendant was arrested and later charged and indicted for trafficking in Oxycodone over 28 grams. The passenger was not arrested or charged.
DISCUSSION
1. Initial Approach of the Range Rover a. Reasonable Suspicion
A police officer is justified in stopping and questioning an individual when the stop is based on a reasonable suspicion that the person has committed, is committing, or is about to commit a crime. Commonwealth v. Watson, 430 Mass. 725, 729 (2000). The officer must be able to point to specific and articulable facts, and any rational inferences that may be drawn therefrom, which justified his or her suspicions. Commonwealth v. Williams, 422 Mass. 111 (1996).
Six factors that have been considered relevant in establishing reasonable suspicion to stop a motor vehicle are (1) high crime area, (2) time of night, (3) vehicle suddenly pulled over or was erratically operated, (4) doors swung open, (5) flight in reaction to a show of police authority, and (6) uncommon movements and furtive gestures of occupants of the vehicle. Commonwealth v. Wilson, 52 Mass.App.Ct. 411 (2001). The circumstances surrounding Officer Sacco’s “stop” of the defendant’s vehicle include three (3) of the above-stated factors. First, Sacco was in that particular area because it was known to be a high crime area, particularly with respect to drug crimes, and the Mystic Valley Housing Authority had asked police to patrol the housing complex that was just one (1) block away from where the defendant was stopped. Also, Officer Sacco himself had recently made a drug trafficking arrest at a house within yards of where the defendant had parked his car. Second, it was approximately 8:30 p.m. when Officer Sacco pulled up next to the Range Rover and the sky was quickly getting darker. Third, Sacco noticed several uncommon and/or furtive movements. Officer Sacco noticed that when the driver of the Nissan exited his car, his “head was on a swivel,” looking up and down the street in a manner Sacco knew from his experience to be typical of “counter-surveillance.” Also, the driver of the Nissan, upon noticing the marked cruiser, hesitated and started to turn back towards his own car before turning back and continuing to the passenger seat of the Range Rover.
*610 A police officer may rely on his own training and experience as a basis for reasonable suspicion. Commonwealth v. Depeiza, 449 Mass. 367, 373 (2007). Combined with the three (3) above factors, Officer Sacco observed behavior that appeared to him, based on his training and experience, to follow the precise manner in which street-level drug transactions occurred. Sacco knew from his training that street-level drug transactions were often conducted near highways, allowing for quick flight from the area. In this case, the two cars were parked close to Route 93, a major highway. The driver of the Nissan also left his car running while he got into the passenger seat of the Range Rover, leading Officer Sacco to believe that the ensuing interaction would brief and that the driver of the Nissan had left his car running in order to leave the area quickly. Sacco also knew that it was common practice for the buyer to enter the car of the seller and he observed the driver of the Nissan get into the front passenger seat of the Range Rover. Finally, Officer Sacco saw that the Range Rover had New Hampshire plates and was parked in an area that required a Massachusetts license plate in order to be parked there. Therefore, Sacco had reasonable suspicion to approach the defendant in order to investigate further. See Commonwealth v. Almeida, 373 Mass. 266 (1977) (when officers experienced in night patrols saw a parked car with its engine running, but lights out, behind an apartment building in a high crime area, they were justified in conducting an investigative stop); Commonwealth v. Kennedy, 426 Mass. 703, 708 (1999) (holding that an officer’s training, education, and knowledge, along with factors similar to those above, can support probable cause to arrest and search the defendant).
b. Custodial Interrogation
In order for Miranda to be triggered, there must be custodial interrogation. Miranda v. Arizona, 384 U.S. 436 (1966). Parking a police car next to—but not blocking the exit of—the target vehicle does not constitute a stop under the Fourth Amendment or Article 14 of the Mass. Declaration of Rights. Commonwealth v. Stephens, 451 Mass. 370, 382 (2008). Parking a police car so as to block the exit of the target vehicle, however, does constitute a stop under the Fourth Amendment and Art. 14. See Commonwealth v. King, 389 Mass. 233, 241 (1983); Commonwealth v. Helme, 399 Mass. 298, 303 (1987). Given the fact that Alexander Avenue is a one-way street and the Nissan was parked directly in front of the defendant’s Range Rover, it is likely that Officer Sacco’s cruiser was blocking the exit of the Range Rover, indicating that the defendant was in custody.
Interrogation requires questioning that the police should know is reasonably likely to result in an incriminating response. Rhode Island v. Innis, 446 U.S. 291 (1980).[2] Officer Sacco’s initial questioning of the defendant was most likely not intended to illicit an incriminating response. Sacco began by asking the defendant what he was doing and if he was visiting anyone on the street. The defendant responded that he and his friend were going to the liquor store and that they were not from the area, telling Sacco they were both from Somerville, MA. Sacco then told the defendant that he had a nice car and that he had noticed the New Hampshire license plates, proceeding to tell the defendant that no liquor stores were open at the time and the street was resident-only parking. Since the defendant had indicated that he was from Somerville, and the Range Rover had New Hampshire license plates, Officer Sacco also asked the defendant who the car belonged to, to which the defendant stated, “a friend.” Sacco asked the defendant if he had a license and the defendant indicated that he did and asked Sacco if he would like to see it. At that point, Sacco exited his cruiser and approached the Range Rover.
Officer Sacco’s above conversation with the defendant was casual in nature. Sacco spoke in a calm tone, did not flash his lights, draw his weapon, or even get out of his cruiser. He was merely trying to determine what was going on, not necessarily implicate the defendant in any crime. Therefore, Sacco’s initial questioning of the defendant did not constitute interrogation and thus, did not trigger the Miranda warnings. When Sacco’s conversation with the defendant revealed that the defendant alleged he was from Somerville (despite his New Hampshire plates) and that the Range Rover did not actually belong to him, Officer Sacco was warranted in asking to see the defendant’s license, exiting his cruiser to look at it, and approaching the Range Rover to further investigate the situation.
2. Search of the Interior of the Range Rover
As Officer Sacco approached the Range Rover he smelled burnt marijuana, elevating his reasonable suspicion of illegal activity to probable cause. See Commonwealth v. Correia, 66 Mass.App.Ct. 174, 177 (2006) (detection of “a strong, fresh odor of burnt marijuana emerging from a motor vehicle provide[s] probable cause to search the vehicle”).[3] Officer Sacco then said to the defendant, “You know what my next question is, right?” to which the defendant responded by giving Officer Sacco a coffee cup that contained a burnt marijuana “cigar.”[4] At this point Officer Sacco had probable cause to believe that there would be additional drugs in the car based on the activity he had seen prior to approaching the Range Rover coupled with the smell of marijuana and the burnt marijuana “cigar.” Once probable cause to search a car has been established, a police officer may search any part of the car where it is reasonably likely the object of the search may be found, including any compartments, containers, and the trunk, for contraband. United States v. Ross, 456 U.S. 798 (1982).[5] Wyoming v. Houghton, 526 U.S. 295 (1999).
*611 Officer Sacco asked the defendant to step out of the car, where he informed the defendant of his Miranda rights, which the defendant said he understood and acknowledged. The ensuing conversation between Officer Sacco and the defendant informed the officer that there was a “hypothetically” large amount of drugs in the car, which gave further support to Sacco’s belief that illegal activity was occurring and contraband would be found in the Range Rover. Upon searching the car, police found a significant amount of cash, in addition to the $800 found on the defendant (packaged in a manner the police knew from their experience to be consistent with drug distribution). They also found 290 80mg Oxycontin pills, separated into three clear plastic bags in a green canvas bag on a child’s car seat behind the front passenger seat.
ORDER
For the foregoing reasons, it is hereby ORDERED that the defendant’s Motion to Suppress is DENIED.

That area of Medford was resident-only parking, which required Massachusetts license plates and a resident sticker.

See Commonwealth v. Torres, 424 Mass. 792, 796-97 (1997) (citing Irmis, “Interrogation must reflect a measure of compulsion above and beyond that inherent in custody itself, ” and therefore Miranda warnings are only required when “a person in custody is subjected to either express questioning or its functional equivalent”).

See also Commonwealth v. Kitchings, 40 Mass.App.Ct. 591 (1996); Commonwealth v. Lawrence L., 439 Mass. 817 (2003); Johnson v. United States, 333 U.S. 10 (1948) (all standing for the proposition that an odor of a forbidden substance is sufficient for probable cause to search an individual or a location).

Offlcer Sacco should have read the defendant his Miranda rights prior to continuing questioning since his questioning now centered upon the smell of marijuana and responses from the defendant regarding the smell would most likely incriminate the defendant. The fruits of an interrogation done without Miranda warnings are, however, admissible so long as the statements made are voluntary. United States v. Patane, 542 U.S. 630 (2004). Therefore, the marijuana cigar handed to Officer Sacco is admissible. Furthermore, the police did not rely upon the cigar in order to search the car; they had probable cause based on the odor of marijuana alone.

Commonwealth v. Garden, 451 Mass. 43, 50 (2008) (cites Ross for the scope of a warrantless automobile search based on probable cause).